JOHN DUNCAN and others v. WILLIAM T. BARNARD.

Where a draft, drawn by one as agent for a succession, was accepted, on the faith of the succession and not of the agent personally, for the purpose of raising funds for the purchase of supplies for a plantation belonging to the succession, for the use of which the proceeds were applied, and the authority of the agent to contract for the succession is not denied, the agent cannot be made personally liable for the draft. The acceptance of the draft is an admission of the agent's right to draw in that capacity, and throws on the acceptors the burden of proving the want of authority.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Finney*, for the plaintiffs. The defendant is personally responsible as the drawer of this bill, accepted for his accommodation. Any one who intermeddles with the affairs of a decedent's estate, who is neither executor nor administrator, is chargeable with the debts of the estate, so far as assets come into his hands. 2 Black. Com. 507, 508. And the drawing a bill is an admission of assets. Bayley on Bills, 76, *notes* O, and 53, 54. Any one who draws a bill of exchange in the name of another person, whether natural or legal, from whom, or from which he has no authority to do so, is personally responsible.

Trustees, guardians, executors and administrators, and other persons acting *en autre droit*, are personally liable on bills of exchange, because they have no authority to bind the persons, or the estates they represent ; and hence, to give any validity to the draft, they must be deemed personally bound. And should an executor or administrator draw, endorse, or accept a bill, in his own name, adding thereto the words, " *as executor*" or " *as administrator*," he would be personally responsible thereon. They may exempt themselves from personal responsibility by clearly expressing in the instrument, that the money is to come out of the assets ; but, in the absence of this most unequivocal expression, they will be bound personally. Story on Bills, 89, 90. Bayley on Bills, 76, and *notes*. Chitty on Bills, 36, *note* 1, Am. ed. of 1821. 6 Mass. R. 58. 5 Mass. R. 299. 2 Brod. & Bing. 460.

If an executor or administrator, who draws a bill in that capacity, binds himself personally for want of authority to bind the estate, *a fortiori*, does one bind himself personally, who draws a bill as representative of an estate which he has no authority whatever to represent in any manner. The reason applies with much greater force.

*Wharton*, for the defendant and intervenors.

BULLARD, J. This is an action instituted by attachment against William T. Barnard, to recover of him six hundred and thirty-four dollars, a balance of account for advances made by the plaintiffs, according to an account annexed to the petition. The account referred to appears to be one against the estate of W. Barnard, of which it seems the present defendant is one of the heirs, and who was acting as manager on a plantation belonging to the estate. The account is credited by the nett proceeds of a draft for $805 45, drawn upon the plaintiffs, and signed, " Estate of W. Barnard, per William T. Barnard," and when taken up, the full amount is charged to the same account. This draft was drawn, accepted, and negotiated, in order to put the plaintiffs in funds for the furnishing of supplies to the plantation belonging to the estate. The amount of the draft, less the balance of $170 14, on a previous account in favor of the estate, forms the amount sued for.

Twenty-eight bales of cotton were attached as the property of the defendant, in the hands of Yeatman & Co. The Planters Bank of Tennessee intervened, and claimed the cotton as its property. Judgment was rendered for the plaintiffs, and both the defendant and the bank have appealed.

The defendant, Barnard, in his answer, denied that the cotton belonged to him ; and he further pleaded, that the account sued on, is against the estate of W. Barnard, and that suit against an estate, cannot be brought by attachment ; that he is one of three heirs, and if bound, is only so jointly, and consequently that the other two heirs ought to be cited.

It has not appeared to us important to determine to whom the cotton attached belonged at the moment the attachment was sued out, being of opinion, that the last plea of the defendant must prevail. It appears to us clear, that the draft was accepted on the faith, not of the defendant personally, but on that of the estate, in whose name it was drawn, and for whose use the proceeds were applied.

But the plaintiffs' counsel contends, that the defendant is personally liable for the full amount of the draft accepted for his accommodation ; because, first, any one who intermeddles with the affairs of a decedent's estate, who is neither executor, nor admin-

istrator, is chargeable with the debts of the estate, so far as assets come into his hands, and the drawing a bill is an admission of assets; and that any person who draws a bill without authority, makes himself personally liable.

The principle here invoked, applies to creditors of the *deceased*, and not to such as became creditors of the *heirs*, or of the estate, after his death. The defendant cannot be said to be in any just and legal sense of the word, executor *de son tort*, in relation to a creditor who became so by a contract with himself, with know-ledge of all the circumstances under which he contracted. The draft was drawn by the estate, through the agency of the defen-dant. If the plaintiff had been deceived, and it were shown that the defendant was without authority to draw, he might be held personally liable. But such is not the case. His authority to contract for the estate, so far as regards supplies for the planta-tion, is not denied. The acceptance of the bill by the plaintiffs, is an admission of his right to draw in that capacity, and throws the burden of proof upon them to show a disavowal of his power to bind the estate.

We are, therefore, of opinion, that the plaintiff cannot recover in the present form of action.

It is, therefore, ordered, that the judgment of the Commercial Court be reversed, and that ours be for the defendant, as in case of nonsuit, with costs in both courts.